ALBERT P. CHAPMAN *vs.* DANIEL COLLINS.

Payment of a note by the principal discharges the surety, so that the note can not be again put in circulation against him.

THIS was an action on a promissory note, as follows: $500. Northampton, February 1, 1850. On demand, I, for value received, promise to pay C. K. Hawkes or order five hundred dollars, with interest annually. Charles Collins. Indorsed: C. K. Hawkes, Daniel Collins.

In his answer, the defendant alleged " that he was not the maker of said note, but was the second indorser; that he has never been notified of a demand on the maker, and non-payment of the note in suit. And the defendant further says, upon information and belief, that the note in suit has been paid out of the estate and effects of the maker, and that it was so paid before it came into the hands of the plaintiff."

At the trial in the court of common pleas, before *Hoar*, J., March term, 1853, the following facts appeared, which, it was agreed, should be taken for the purposes of this case, subject to all legal objections to the species of proof, and to their legal effect.

In February, 1850, C. K. Hawkes, being in trade, took Charles Collins into partnership with him, upon an agreement that Charles Collins should contribute $1,000 to the capital stock. The note in suit, signed by Charles Collins, and payable on demand to C. K. Hawkes or order, with the name of Daniel Collins upon the back, was given to Hawkes by Charles Collins, as a part of the $1,000. Hawkes, in a few months afterwards, put his own name upon the back of the note, above that of Daniel Collins, and transferred it to his sister, Mary A. Hanna, who paid him the money for it, and continued to hold it till the spring of 1851. These facts, as to the names on the note, were proved only by the parol testimony of Hawkes, and with the objection, on the part of the defendant, that Daniel Collins appeared on the note as a second indorser only, and that it was not competent to change his apparent liability upon the note by parol.

It further appeared that the $1,000 was made up, beside the note in suit, in part by a note which one Miles G. Moies gave to Charles Collins, in exchange for Charles Collins's note for the same sum of $300; and that Hawkes credited Charles Collins on his books for the $1,000. Charles Collins died September 14, 1850, the partnership continuing till that time; and left, as his heirs, two brothers, and one married sister, the wife of Calvin Torrey, Esq. At the time of the funeral, it was arranged between Hawkes and the brothers, sister, and her husband, that Hawkes, instead of taking an account of

partnership effects, should take back Charles's interest in the stock, account to Charles's estate for the $1,000 capital which he had put in, and allow him a salary during the period of the copartnership. In consequence of this arrangement, Hawkes, on the 30th of December, 1850, charged back the $1,000 to Charles Collins, thus balancing the previous credit on his book.

It further appeared that, when Daniel Collins put his name on this note, it was agreed that Charles should effect an insurance on his life for $500, payable to Daniel, as a security for his liability. This was done, and after the death of Charles, Daniel received the insurance money. The policy may be referred to. In February, 1851, Calvin Torrey was appointed administrator of Charles Collins's estate, and in April, 1851, returned an inventory and an account of administration, which may be referred to. Hawkes had several interviews with Torrey relative to the settlement of his debt to Charles Collins's estate, in none of which was any suggestion made of any arrangement different from the one agreed on at the funeral. Hawkes took up the note which Charles Collins had given to Moies, by giving Moies back his note; and told Moies that it was agreed to cancel the notes. This was two or three months after the death of Charles. In the spring of 1851, Hawkes took back from his sister the note in suit, paying her the amount due her upon it. In September, 1851, Hawkes and Torrey had a settlement, in which Torrey declined to receive the note in suit, on the ground that Daniel Collins, having collected the insurance money, ought to pay it, but offered to take the note of the plaintiff for a like amount instead; and Hawkes thereupon passed this note to the plaintiff, receiving for it the plaintiff's note for a like amount, which he paid Torrey in settlement of the $1,000, and other accounts between him and Charles Collins's estate. It appeared that Chapman, the plaintiff, was informed by Torrey of all the facts in the case, and took the note as above stated. And Torrey testified that, although there was no agreement between them to that effect, yet that he should not et the plaintiff suffer if he failed in this suit; and that he

still held the plaintiff's note, which he received from Hawkes, unpaid.

The parties thereupon agreed that the case should be taken from the jury, and judgment rendered upon the foregoing facts as the court should order. The court gave judgment for the defendant, and the plaintiff appealed.

*R. A. Chapman,* for the plaintiff.

*E. W. Bond,* for the defendant. 1. The defendant appears on the note as a second indorser, and it was not competent to change this apparent liability by parol evidence. *Howe* v. *Merrill,* 5 Cush. 80 ; *Stackpole* v. *Arnold,* 11 Mass. 32, 33.

2. The note was paid and discharged by Charles Collins's estate, long before it came into the plaintiff's hands, and the plaintiff took it with a knowledge of all the facts. It was paid and discharged in pursuance of the arrangement made between Hawkes and C. Collins's heirs, at the funeral ; and Torrey, who was administrator and husband of one of the heirs, ratified the arrangement after his appointment as administrator. The entry made in Hawkes's books, December 30, 1850 ; his giving up the Moies note at or about the same time ; and his declaration to Moies, when the note was given up, that " it was agreed to cancel the notes," show that the note in suit was virtually discharged within a few months after C. Collins's death, and Hawkes was afterwards merely a trustee or depositary of the note. The fact, that the inventory of C. Collins's estate, which is sworn to by the administrator, makes no mention of C. Collins's interest in the stock of goods, shows that as early as April 22, 1851, the administrator considered the arrangement which was made at the funeral as having taken effect. As to the legal effect of the entry made in Hawkes's books, December 30, 1850, see *Cole* v. *Trull,* 9 Pick. 325.

3. The evidence reported shows that the real plaintiff in this suit is Torrey, the administrator of C. Collins's estate ; and therefore the action cannot be maintained, because it is the case of the maker of a note suing his own surety.

4. The fact, that the defendant has received the amount of the policy issued upon Charles Collins's life, has no bearing

upon this case.  If he has received the amount, and is not entitled to retain it, he is chargeable as for money had and received, for the use of the estate, and can be made to surrender it in an action brought to recover the same.

By the Court.    This action on the note cannot, we think, be maintained.   It appears to us, from the evidence reported, that if Daniel Collins was ever liable, it could be in no higher capacity than as surety to Hawkes for Charles Collins ; that the note was, by force of the agreement, paid by the funds of Charles Collins's estate ; and that, when it got back into the hands of Hawkes, it was *functus officio* as a note, and could not be again put into circulation.   The payment by the principal discharged the surety.      *Judgment for the defendant.*